

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-7-2004

# Kumi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4549

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Kumi v. Atty Gen USA" (2004). *2004 Decisions*. Paper 855.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/855

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-4549
_____

ANDI KUMI,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF
THE UNITED STATES OF AMERICA; MICHAEL GARCIA,
As Commissioner of the Immigration & Naturalization Service;
KENNETH ELWOOD, As District Director of the Philadelphia INS Office

_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
INS No. A75-561-083

_____

Submitted Under Third Circuit LAR 34.1(a)
January 30, 2004

BEFORE: NYGAARD and FUENTES, Circuit Judges,
and O'NEILL,[1] District Judge.

_____

(Filed April 7, 2004)

_____

_____

1.      Honorable Thomas N. O'Neill, Jr., Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

O'NEILL, <u>District</u> <u>Judge</u>.

Petitioner Andi Kumi appeals from an order of the Board of Immigration Appeals that affirmed the decision of the Immigration Judge to deny petitioner's request for asylum, restriction of removal and withholding of removal. We conclude that substantial evidence supports the Immigration Judge's's decision and, therefore, we will affirm.

Petitioner is a native and citizen of Albania who entered the United States on October 19, 1997. Petitioner testified that he and his two brothers and father were members of the Legality party in Albania, a pro-monarchist political party. According to petitioner, the Legality party was founded in the late 1930s, ceased to exist during Albania's communist era, and was revived in 1991 after the fall of the communist regime. Petitioner did not hold a party office nor did his father or brother, but he testified that his grandfather was a secretary to the King of Albania in the 1930's and served in the government in other capacities until 1943.[1]

Petitioner testified that he participated in political demonstrations in support

---

1.  Petitioner testified about his family's suffering under the communist regime, which included the execution of his grandfather, imprisonment of his father and the family's interment in Godolesh Elbasan. In view of the fall of the communist regime, these travails are not relevant to a claim of future persecution under 8 C.F.R. § 208.13

2

of the Legality party between 1991 and 1997. During the rallies, in which thousands of people participated, petitioner shouted political slogans at the police, helped to topple a symbolic statue, and engaged in other activities that were non-violent.

Petitioner testified that following several of these demonstrations he was detained by the police and on some occasions injured by them. The event which convinced petitioner to leave Albania was the death of one of his brothers in 1997. Petitioner claimed that his brother was taken into police custody at a September 1997 demonstration and subsequently killed by the police for his political actions.

The Department of State's Albania: Profile of Asylum Claims and Country Conditions (September 1997) and the May 1998 Addendum to the Profile state that Albania is a small and impoverished country that suffered from a repressive and idiosyncratic communist regime from WWII until 1990. The year 1997 was a difficult one for the country with fighting and disorder so severe that the country was brought "to the edge of anarchy." App. 211. In reference to claims of persecution for political opinion, the Profile and Addendum attribute problems with violence to crime instead of politics. The Department of State's Albania Country Report on Human Rights Practices For 1998 acknowledges that there have been problems with Albania's police force, including the national intelligence service (ShIK), but notes that the situation is improving. ShIK's size and influence have declined and recent legislation mandated restructuring of the police force.

3

## Standard of Review

Where the BIA does not render its own opinion and defers to or adopts the opinion of the Immigration Judge, a Court of Appeals reviews the Immigration Judge's decision. See, e.g., Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001). This Court must apply the substantial evidence standard of review to any credibility findings or factual determinations. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). Under this deferential standard, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Id. at 483-84.

## Discussion

### Substantial Evidence

There is not substantial evidence to compel a reversal of the administrative denial of petitioner's application for asylum and withholding of removal. The Attorney General has the discretion to grant asylum to "refugees." INA § 208(b), 8 U.S.C. § 1158(b); INS v. Cardoza Fonseca, 480 U.S. 421, 428, n.5 (1987). A "refugee" is a person who is unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42).

To qualify for withholding of removal, an applicant bears the burden of proving eligibility for asylum and the additional burden of demonstrating that there is a clear probability that "his or her life would be threatened in the proposed country of

4

removal on account of" a protected ground. 8 C.F.R. § 208.16(b). See INS v. Stevic, 467 U.S. 424, 430 (1984). This standard is more stringent than the reasonableness standard for granting asylum and therefore an applicant who cannot meet the asylum burden will also fail to meet the withholding of removal burden. See Change v. INS, 119 F.3d 1055, 1059 (3d Cir. 1997).

The burden of proof and persuasion to establish asylum eligibility resides with the asylum applicant. See 8 C.F.R. § 208.13(a); Senathiraja v. INS, 157 F.3d 210, 215 (3d Cir. 1998). To meet that burden, an applicant must provide credible evidence. See 8 C.F.R. § 208.13(a); Abdulai, 239 F.3d at 551.

The Immigration Judge found that petitioner's testimony before him was not credible because of the numerous contradictions among petitioner's statements of the facts of his case. In Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998), the BIA set out three steps for evaluating the credibility of an asylum applicant when the evaluation is not based on demeanor. An adjudicator must first identify whether the applicant's evidence contains inconsistencies and then evaluate whether the inconsistencies are material. Finally, the adjudicator must evaluate whether the applicant reasonably explained the inconsistencies.

One major area of inconsistencies in petitioner's claims concerns his detentions by police. Petitioner did not provide exact dates for his arrests. For example, petitioner's affidavit alleged his 1991 arrest took place in March, while at the hearing he

5

testified that the arrest had been on February 26. When confronted with discrepancies, he remarked that he does not pay too much attention to dates. Petitioner was also unable to provide concrete details as to the durations of his detentions, conceding that these inconsistencies are problematic to his credibility. At the hearing petitioner testified that his 1991 detention lasted for five or six hours. In the affidavit, he stated that he was detained for more than twenty-four hours. At his asylum interview, he told the interviewing officer he had been detained for three days.

Petitioner's testimony is inconsistent regarding his claims of police brutality as well. Both the date and exact nature of the injury are different in different accounts. According to one account, petitioner had two of his fingers cut with a letter opener on February 26, 1991. According to his affidavit, a police officer cut his knuckles in March 1991. At his asylum interview, petitioner stated that his hand was cut by a police officer in 1994.

Petitioner's testimony regarding the disposition of his brother's body after his death was also inconsistent. His family learned of the death around October or November 2 or 3 (petitioner first said November, but later said October). According to his affidavit, no one in his family ever saw the body. At the hearing, however, he testified that his mother identified his brother's body and prepared it for burial.

Petitioner also testified that he and his living brother hid at his uncle's house the day after learning of their brother's death (October or November 3 or 4). Later,

however, he testified that he and his living brother had fled Albania on approximately September 17, a week or so before the other brother was allegedly taken into police custody at the September 1997 demonstration.

All of these inconsistencies are germane to petitioner's asylum claim as they relate to whether he was persecuted in Albania before his departure and to whether he has a well-founded fear of future persecution should he return to the country. The Immigration Judge's opinion provides a sufficiently detailed account of why he felt the inconsistencies in petitioner's testimony gave rise to a finding of insufficient credibility to meet the third prong of the test in In Re A-S-, 21 I&N Dec. at 1106. Petitioner has not presented substantial evidence to compel a reversal of the Immigration Judge's findings as to petitioner's lack of credibility.

Petitioner also failed to demonstrate that his past persecution or his fear of future persecution were on account of his political opinion or another ground cognizable under the statute. See 8 C.F.R. § 208.13(b). Petitioner alleges that he provided sufficient evidence of security officials punishing him and others for their political beliefs. While he did provide subjective evidence as to his fear of future persecution, he presented little or no objective evidence to support his claims.

Petitioner did not present any conclusive evidence regarding the cause of his brother's death. The only evidence concerning the death is petitioner's testimony that his brother was found dead three or so days (the dates in his testimony vary) after his brother

7

participated in a political demonstration and that friends told his family that his brother had been "taken over by police in the demonstration." App. 146, 154.

The Immigration Judge relied on information contained in the reports on Albania from the Department of State that were submitted as evidence to find that petitioner's arrests were not precipitated by his political views, but rather by the attempt of the Albanian police "to regain order and control of the violence and the chaos that was pervasive in Albania." App. 60. While reliance on State Department reports alone has been criticized by this Court,[2] the other documentary evidence submitted by petitioner was given minimal weight because of his failure to follow the procedural requirements for their submission.[3]

"[T]o obtain judicial reversal of the BIA's determination" a petitioner "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). Petitioner has not done so. Considering the record as a whole, the Immigration Judge's determination that petitioner did not establish the requisite fear of persecution for his political views was reasonable and based on substantial evidence.

---

2.      See Lin Wu Lin v. INS, 238 F.3d 239, 246 (3d Cir. 2001) ("The Board's decisions cannot be sustained simply by invoking the State Department's authority.").

3.      8 C.F.R. §§ 3.33, 287.6(b) require that foreign language documents be translated and certified, as well as timely. The documents petitioner presented met none of these requirements.

**Failure to Exhaust Administrative Remedies**

We may not consider petitioner's claim under the Convention Against Torture because he did not appeal the Immigration Judge's denial of his CAT application to the BIA. We may only review a final order of removal if "the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1); 8 U.S.C. § 1252(d)(1). Thus where petitioner failed to raise an issue before the BIA, the Court of Appeals does not have jurisdiction to consider it. See, e.g., Massieu v. Reno, 91 F.3d 416, 422 (3d Cir. 1996) ("[T]he courts of appeals generally may provide meaningful review as to any properly exhausted claims directly attacking a final order of deportation.").

**Due Process and the Streamlining Regulations**

Under this Court's recent decision in Dia v. Ashcroft, No. 02-2460, 2003 WL 22998113, 2003 U.S. App. LEXIS 25901 (3d Cir. Dec. 22, 2003), the BIA's use of the Affirmance without Opinion procedure did not violate petitioner's due process rights.